UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NATASSJA P.,              :
    Plaintiff,         :
                          :
    v.                 :   C.A. No. 18-84WES
                          :
NANCY A. BERRYHILL, ACTING :
COMMISSIONER OF SOCIAL SECURITY, :
    Defendant.         :

# REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

## I.    Introduction

Plaintiff Natassja P., now a woman of thirty, has struggled with cognitive impairment and obsessive compulsive disorder ("OCD"), including repetitive behaviors and rituals, since childhood. Prior to the current application, she had been found to be disabled and awarded benefits. In 2011 she was able to find a job cleaning a church, which she was able to do until 2014, when there was a change in personnel and she was asked to do "a lot more work" and to "do a bunch of different things." Tr. 65. She stopped working on October 16, 2014, and applied for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act").

Plaintiff's current application is supported by two opinions from her treating psychiatrist (Dr. Gene Jacobs), an opinion from her treating therapist (Nicole Ford, LICSW), cognitive and other clinical testing performed by a psychologist (Dr. Susan Culbert) in connection with treatment, and an opinion from her primary care physician, Dr. Irene Chliwner. All opined to potentially disabling impairments and functional limitations; none opined to substance use disorder or to any impact on OCD caused by marijuana use; Ms. Ford and Dr. Jacobs expressly

ruled out any contribution to Plaintiff's symptoms from "alcohol or substance abuse." Despite these opinions, the Administrative Law Judge ("ALJ") focused on stray record references to marijuana use, relied on a non-examining medical expert (Dr. Stuart Gitlow) whose opinion appears to rest solely on the lack of a "series of longitudinally negative urine drug tests," Tr. 88, and found that Plaintiff's primary severe impairment is not OCD, but rather "substance induced anxiety disorder with obsessive-compulsive symptoms," Tr. 22, in addition to borderline intellectual functioning. In further reliance on Dr. Gitlow's opinion that "the studies ha[ve] shown that about 80% of people who discontinue the marijuana use, their symptoms of anxiety and OCD falls into that domain, dissipate or markedly reduced," Tr. 88-89, the ALJ found that, while the limitations caused by OCD were so severe as to meet the criteria for Listing 12.06 (anxiety and obsessive-compulsive disorders), if all marijuana use were stopped, Plaintiff would recover the residual functional capacity ("RFC")[1] to perform uncomplicated work at all exertional levels, including her past work as a cleaner.

Plaintiff's motion to reverse the Commissioner's decision is grounded in her contention that the ALJ erred in determining that Plaintiff's marijuana use amounted to a "substance use disorder" that was a material factor contributing to Plaintiff's disability during the period in issue. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the record, I find that the ALJ erred in failing properly to evaluate Plaintiff's use of marijuana as required by SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013), leaving his RFC without the support

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

2

of substantial evidence. Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be DENIED.

## II.     Background

I begin with a survey of the medical record focused on references to substance abuse, particularly the use of marijuana, and how it is addressed by treating providers.

First up is Dr. Chliwner, the primary care physician. The earliest record is from March 2014, more than six months prior to when Plaintiff stopped working. Dr. Chliwner endorsed OCD as a diagnosed problem and recorded a history of no smoking, no alcohol and no illicit drugs. Tr. 327-28. In October 2014, Dr. Chliwner noted that Plaintiff was unable to pass the driver's test ("did not understand everything in driving manual"), as well as that she had been trying to work but "is having a hard time of it, is picking more." Tr. 319. Through August 2016, Dr. Chliwner's treating notes consistently carry OCD as the principal diagnosis and rule out illicit drug use. See Tr. 428-29. No need for drug testing or substance abuse treatment is ever noted.

The first record from the licensed social worker, Ms. Ford, is dated October 28, 2014. Tr. 454. It assesses "symptoms of OCD" that "create intolerable anxiety." Id. Ms. Ford's clinical interview included a "substance use screening"; she noted "none reported." Tr. 456. Consistent with her opinion submitted in support of Plaintiff's disability application, Ms. Ford found cognitive limitations and unimproved chronic mental health symptoms that restricted the ability to function. Tr. 459, 464. Ms. Ford referred Plaintiff to psychiatric nurse practitioner Ryan Baxter, Tr. 457, and later to Quality Behavioral Health, Inc. ("QBH"), for a higher level of care

for OCD and other mental health issues. Tr. 461. She did not diagnose substance use disorder nor did she suggest the need for substance abuse testing or treatment.

Like the other treating sources, Nurse Baxter diagnosed OCD and depression. Tr. 337, 339. His December 2014 intake history reflects OCD behaviors that were exacerbated significantly while Plaintiff was trying to work. Tr. 339. Under the heading, "Substance use history," he noted, "some marijuana use, etoh occasional." Tr. 341. Despite this notation, throughout the treating relationship, Nurse Baxter's primary diagnosis and the focus of treatment was OCD; he never diagnosed any substance use disorder, never recommended or ordered substance abuse testing and never suggested that Plaintiff should restrict the use of marijuana. Tr. 337-60, 436-47.

In the summer of 2015, Plaintiff began treating at QBH, at first with Deborah Horwitz, PMHNP-BC, and Patricia Day, RN, LMHC, LCPD. Dr. Jacobs, a psychiatrist, appears to have taken over from Nurse Horwitz in the end of 2015. Over the almost two-year period from intake at QBH through the final appointments of record in the spring of 2017, these providers saw Plaintiff regularly for substantive treatment, with the focus on serious and debilitating cognitive issues and OCD symptoms. Dr. Jacobs ordered cognitive testing for treating purposes, which was done by psychologist Dr. Culbert. Tr. 500-01. The results confirmed significant cognitive limitations, including a full scale I.Q. of 62, as well as severe anxiety and depression. Tr. 499-501. Dr. Culbert also found that Plaintiff's effort, cooperativeness, and comprehension of instructions associated with the cognitive testing were all adequate. Tr. 500.

Over the course of treatment at QBH, all three of its professionals consistently addressed whether there was substance use; all three consistently found that, apart from occasional alcohol

4

use, it was not present. E.g., 402, 407, 416. For example, in August 2016,[2] Dr. Jacobs noted, "Mre ocd, occ si no plan no alcohol or marijuana." Tr. 509. After the ALJ hearing in January 2017, at which the focus of this case shifted to Dr. Gitlow's opinion that marijuana abuse was material to Plaintiff's disabling OCD symptoms, Dr. Jacobs had Plaintiff screened for drugs (for the first time, as far as this record reveals) and the test was negative; Dr. Jacobs' notes reflect that he questioned her closely and she told him she had used marijuana "once in a blue moon." Tr. 42. During these post-hearing appointments, with marijuana use ruled out by drug screens, the record continues to reflect objective observations of the effects of serious OCD. E.g., Tr. 54 ("hands are raw – sore & hands bleeding").

A handful of other references round out the field. In early 2015, Plaintiff saw a Dr. Stratton at Neurohealth for headaches; his social history includes "Marijuana use: *Admits." Tr. 422. However, neither his assessments nor his treatment notes makes any mention of it; his notes do not suggest any link between the history of marijuana and the symptoms he was asked to treat. Tr. 423. When Plaintiff saw a nurse practitioner at the same practice almost two years later (but still before the Gitlow hearing), the notes say, "Marijuana use: *Denies." Tr. 519. And when Plaintiff was seen for a cough in 2016, the physician assistant's history included the notation, "Illicit drugs: denies." Tr. 493.

To recap, despite evidence that treating providers directed significant attention to the possibility of substance abuse throughout the longitudinal treating record, there are only a

---

[2] The ALJ and Dr. Gitlow both noted that Dr. Jacobs' notes for May, July and August 2016 carry an obvious typographical error, in that each is dated "2015." Tr. 28. Dr. Gitlow also criticized Dr. Jacobs for his practice of maintaining a running record, with notes from prior encounters shown below the note from the current encounter. Tr. 91-92. Dr. Gitlow illogically extrapolated from these observations that the accuracy of Dr. Jacobs' records, and potentially Dr. Jacobs' honesty, should be called into question: "it calls into question – I won't go so far as to say the honesty of the documenting clinician, but it calls into question the accuracy of the record for sure." Tr. 92. The ALJ incorporated this unsupportable conclusion in his decision. Tr. 28 n.6. While the ALJ does not list it as a reason for his decision to afford "very limited probative value" to the Jacobs opinion, its inclusion in the decision suggests that it may have tainted the analysis. This is yet another reason why remand is recommended in this case.

5

handful of references to occasional ("some") marijuana use, no treating source ever diagnosed substance use disorder and no treating source ever recommended either substance abuse testing or that the use of marijuana should be curtailed because it was adversely impacting what all treating sources acknowledged to be serious OCD symptoms. Dr. Jacobs signed two opinions reflecting his conclusion that Plaintiff's cognitive impairments, particularly her I.Q. of 62, left her "very impaired," while Ms. Ford's opinion focused on the significant limiting effects of OCD. Tr. 48, 391, 527. Dr. Chliwner focused on OCD and headaches, opining that anxiety caused the headaches and that OCD "interferes with any work." Tr. 432-35. Yet both Jacobs opinions and the Ford opinion reflect responses in the negative to the form's question that asked, "do alcohol or substance abuse contribute to any of your patient's limitations set forth above?" Tr. 395, 450, 532. The Chliwner opinion does not address substance use at all.

Unlike the treating sources, who found Plaintiff's reports of occasional marijuana use to be inconsequential, the state agency experts attached somewhat greater significance to it, starting with the June 1, 2015, consultative examination report prepared by psychologist, Dr. John Parsons. Tr. 362-70. Dr. Parsons' cognitive testing yielded very low scores (full scale I.Q. of 56), but he noted a lack of motivation and effort during testing and estimated that Plaintiff's true cognitive level was borderline. Tr. 367, 370. Dr. Parsons covered substance use in his clinical interview and noted:

> She started consuming alcohol around the age of 16, but never drank heavily or consistently. She is an occasional social drinker and did not report any negative consequence associated with alcohol.
>
> She smokes marijuana periodically to help deal with stress. She has never used any other unprescribed drugs, and never had substance abuse treatment. She did not report any negative consequence associated with marijuana.

6

Tr. 365.  Based on his testing and clinical interview, Dr. Parsons' primary and secondary diagnoses were major depressive disorder and OCD.  Tr. 370.  As a tertiary diagnosis, he added "Cannabis Use Disorder, Mild."  Id.  Based on Dr. Parsons' report, the non-examining psychologists considered "Drugs, Substance Addiction Disorders" as a potential medically determinable impairment at Step Two.  With access to the balance of the then-extant treating record, they deployed their expertise and concurred that substance abuse was not a severe impairment at Step Two: "There is no evidence of any substance abuse disorder/DAA issue." Tr. 109, 113, 120, 126.  One of these experts, Dr. Clifford, was more specific: "[Parsons] Dx's include OCD, Major Depression, Borderline Intellectual Functioning (estimated) and cannabis abuse (mild).  **The latter is non-contributory to restrictions in this review**."  Tr. 110 (emphasis added).

Faced by this record, the ALJ called Dr. Gitlow to testify at the rescheduled January 31, 2017, hearing.  Based solely on Dr. Parsons' tertiary diagnosis of mild cannabis use disorder and Nurse Baxter's reference in his intake history to "some" marijuana use, Dr. Gitlow testified that Plaintiff's "fairly strong" OCD symptoms coexisted with cannabis use disorder but that the record did not contain any negative marijuana drug screens.[3]  Accordingly, Dr. Gitlow opined:

> What I can't do is say that she has OCD because to say that would require that she not be using any psychoactive substances that can cause the symptoms that are consistent with OCD, which would mean that we would need some negative urine drug tests, as a way of ruling that out.  And that's what we don't have here.

Tr. 87.  Ultimately, Dr. Gitlow found that Plaintiff's OCD was so severe as to meet the criteria for Listing 12.06.  Tr. 88.  However, instead of a diagnosis of OCD as endorsed by every other source, Dr. Gitlow opined that Plaintiff's impairment was "substance induced anxiety disorder,

---

[3] Of course, there are no drug screens at all because no treating source was ever concerned that substance abuse was exacerbating Plaintiff's symptoms.

7

specifically with the obsessive compulsive symptoms." Tr. 87-88. Based on that diagnosis, and because the record lacked at least four months of clean urine screens, as well as because "studies ha[ve] shown that about 80% of people who discontinue the marijuana use" see a marked reduction in anxiety and OCD symptoms, Tr. 88-89, Dr. Gitlow concluded that Plaintiff's underlying OCD is likely only "at least mild in nature." Tr. 88. The ALJ's decision rests entirely on the Gitlow opinion.

### III. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does

not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

## IV.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.      The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at

9

Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### B. Substance Abuse

In 1996, Congress amended the Act to deny disability benefits if alcohol or drug abuse comprises a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C); Brown, 71 F. Supp. 2d at 29; 20 C.F.R. § 404.1535(b). If the claimant is under a disability and there is medical evidence of alcoholism or substance addiction, the ALJ must determine the impact of the addiction on the claimant's disability. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a). "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism." Brown, 71 F. Supp. 2d at 35; see also 20 C.F.R. § 404.1535(b)(1).

Effective on March 22, 2013, a policy interpretation issued to clarify how the Commissioner determines whether "drug addiction and alcoholism" is a medically determinable impairment and, if either is, whether such substance abuse is material to the finding that a claimant is disabled, requiring that benefits be denied. SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013). SSR 13-2p makes clear that the adjudicator must first determine whether the claimant has a medically determinable substance use disorder, rather than a mere history of occasional prior maladaptive use of alcohol or illegal drugs. Id. at *3. Next, the materiality of the disorder to the disability determination must be considered. Id. In connection with the latter inquiry, "[t]here does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." Id. at *4.

To determine materiality, the ALJ must first conduct the five-step inquiry taking into account all impairments, including drug and alcohol addiction. Brown, 71 F. Supp. 2d at 29. If the ALJ finds the claimant is not disabled, the process ends. SSR 13-2p, 2013 WL 621536, at *10; Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003); Williams v. Barnhart, 338 F. Supp. 2d 849, 862 (M.D. Tenn. 2004). If the ALJ finds the claimant disabled, the analysis "must go one step further" and determine whether the claimant would still be disabled if the claimant stopped abusing drugs or alcohol. Brown, 71 F. Supp. 2d at 35. An impairment caused by past substance abuse may be considered disabling only if the impairment remains after the claimant stops substance abuse. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Harmison v. Halter, 169 F. Supp. 2d 1066, 1069 (D. Minn. 2001).

The question of materiality of drug addiction or alcoholism is reserved to the Commissioner. Ambrose v. Astrue, No. 07-84-B-W, 2008 WL 648957, at *5 (D. Me. Mar. 5, 2008). The Commissioner may base the materiality finding on record evidence during periods of

sobriety. Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 126-27 (2d Cir. 2012); Schell v. Astrue, Civil Action No. 10-10346-GAO, 2012 WL 745024, at *6 (D. Mass. Mar. 7, 2012); see also Vester v. Barnhart, 416 F.3d 886, 891 (8th Cir. 2005) (Commissioner may find that claimant is not disabled if Commissioner is presented with evidence that claimant has demonstrated ability to work during periods of sobriety). When the claimant never achieves sobriety, the materiality determination will necessarily be hypothetical and therefore more difficult; the claimant cannot avoid a finding of no disability simply by continuing substance abuse. See SSR 13-2p, 2013 WL 621536, at *9; Evans v. Astrue, C.A. No. 11-146 S, 2012 WL 4482354, at *2 (D.R.I. Sept. 26, 2012). On the other hand, the claimant does not have to produce evidence of a period of abstinence to sustain her burden of establishing a qualifying disability. SSR 13-2p, 2013 WL 621536, at *4.

## V. Analysis

Dr. Gitlow's, and therefore the ALJ's, analysis is wrongly grounded in the faulty premise that an extended period of sobriety ("a series of longitudinally negative urine drug tests") was essential to avoid denial of Plaintiff's disability claim based on the materiality of her occasional marijuana use. This is error because it ignores the clear and plain language of SSR 13-2p, which was adopted to avoid the precise miscarriage of justice that has occurred here. See SSR 13-2p, 2013 WL 621536, at *4 ("There does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."). Based on this clear error, this case must be remanded for further consideration of substance abuse materiality in light of the requirements of SSR 13-2p and the entirety of the record.

A more difficult question is whether the ALJ also erred in determining that Plaintiff has a substance use disorder at all. Apart from the flawed Gitlow opinion, the only "substantial

evidence" to support this conclusion is Dr. Parsons' tertiary diagnosis of mild cannabis use disorder. No treating source opined to such a diagnosis. Further, Plaintiff correctly points out that the record otherwise supports a finding of "occasional" use, which, as SSR 13-2p stipulates, "does not establish that the claimant has a medically determinable Substance Use Disorder." SSR 13-2p, 2013 WL 621536, at *3; see Tr. 341 ("some marijuana use"); Tr. 365 ("smokes marijuana periodically"); Tr. 422 ("Marijuana use: *Admits"). On cross examination, Dr. Gitlow himself conceded that the treating record at most reflects reports of "occasional[]" or "periodic" use. Tr. 94.

In considering this question, the Court notes that Dr. Parsons' diagnoses are very different from Dr. Gitlow's "substance induced anxiety disorder with obsessive-compulsive symptoms, and borderline intellectual functioning," Tr. 22, 87-88, which is what the ALJ adopted, Tr. 22. That is, Dr. Parsons opined that depression and OCD are the primary diagnoses; unlike Dr. Gitlow, Dr. Parsons drew no link between these diagnoses and substance abuse. Instead, the Parsons report notes substance abuse as a "mild" tertiary diagnosis. More telling, the SSA non-examining experts interpreted the Parsons report as not supportive of a medically determinable substance use disorder that is "severe" as defined at Step Two[4] or that was contributory to any relevant functional limitations. Tr. 109-10, 113, 120, 126. Thus, Dr. Gitlow's opinion is not just inconsistent with the regulatory definition of substance use disorder, which makes clear that a "claimant's occasional maladaptive use or a history of occasional prior maladaptive use of alcohol or illegal drugs does not establish that the claimant has a medically

---

[4] Step Two "severity" is a low bar. An impairment is defined as "not severe" at Step Two when the medical evidence establishes no more than a slight abnormality that would have no more than a minimal effect on an individual's ability to work. Burge v. Colvin, C.A. No. 15-279S, 2016 WL 8138980, at *7 (D.R.I. Dec. 7, 2016), adopted sub nom., Burge v. Berryhill, C.A. No. 15-279 S, 2017 WL 435753 (D.R.I. Feb. 1, 2017) (citing McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986)).

determinable Substance Use Disorder," SSR 13-2p, 2013 WL 621536, at *3. More fundamentally, with only "occasional" or "periodic" use established, nothing in the record provides evidentiary support for the Gitlow opinion that a substance use disorder adversely affected Plaintiff's ability to work. Accordingly, I find that it was also error for the ALJ to rely on Dr. Gitlow as the sole basis for his finding that Plaintiff's OCD was not itself a primary diagnosis, but rather that OCD was derived from and caused by a primary diagnosis of substance use disorder. I recommend remand for a reevaluation of whether Plaintiff had a substance use disorder, as the term is defined in SSR 13-2p.

Finally, while not directly addressed by Plaintiff, on remand, I also recommend that the Court direct the ALJ to reexamine the weight to be afforded to the Jacobs opinions, particularly the interpretation of the I.Q. test results on which these opinions rely. See Tr. 30 (principal reason to discount Jacobs opinions grounded in reliability of Culbert I.Q. test results); n.2 *supra* (discounting Jacobs opinion in reliance on Dr. Gitlow because of typographical error in treating notes). The treating-purpose testing done by psychologist Dr. Culbert yielded a somewhat higher full-scale I.Q. – 62 – than the score that Dr. Parsons opined (56) was depressed by lack of effort. Both of these I.Q. scores are well below the I.Q. criteria (70) for an Intellectual Disorder under Listing 12.05, suggesting that serious consideration of Listing 12.05 should have been undertaken. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The ALJ declined to do so by improperly relying on his lay judgment to reject the Culbert I.Q. score as sufficiently similar to the Parsons scores as to be discounted for the same reason, despite the Culbert finding that Plaintiff's effort was adequate. This analysis should be done with the assistance of a medical expert. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ

was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination.").

## VI. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be DENIED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 19, 2018